IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


STANLEY J. CATERBONE, PRO SE, and     :
ADVANCED MEDIA GROUP,                 :
                                      :
                    Petitioner,       :          CIVIL ACTION NO. 17-4000
                                      :
        v.                            :
                                      :
UNITED STATES PRESIDENT DONALD        :
TRUMP; NATIONAL SECURITY              :
AGENCY, or NSA; DEFENSE               :
ADVANCED RESEARCH PROJECT             :
AGENCY, or DARPA; DEPARTMENT          :
OF DEFENSE; DEFENSE                   :
INTELLIGENCE AGENCY, or DIA;          :
CENTRAL INTELLIGENCE AGENCY, or       :
CIA; FEDERAL BUREAU OF                :
INVESTIGATION, or FBI; UNITED         :
STATES DEPARTMENT OF JUSTICE;         :
UNITED STATES ATTORNEY                :
GENERAL; PENNSYLVANIA STATE           :
POLICE; PENNSYLVANIA ATTORNEY         :
GENERAL; LANCASTER COUNTY             :
COMMISSIONERS; LANCASTER              :
COUNTY CRISIS INTERVENTION;           :
LANCASTER COUNTY SHERIFF              :
DEPARTMENT; LANCASTER MAYOR           :
RICK GRAY; LANCASTER CITY             :
BUREAU OF POLICE; DETECTIVE           :
CLARK BEARINGER, LANCASTER            :
CITY BUREAU OF POLICE;                :
FAIRMOUNT BEHAVIORAL HEALTH           :
SYSTEM; DR. SILVIA GRATZ,             :
MEDICAL DIRECTOR, FAIRMOUNT           :
BEHAVIORAL HEALTH SYSTEM;             :
LANCASTER GENERAL HOSPITAL;           :
LANCASTER REGIONAL MEDICAL            :
CENTER; MEDEXPRESS, URGENT            :
CARE, Rohrerstown Road, Lancaster, PA; :
SOUTHEAST MEDICAL CENTER,             :
Brightside Baptist Church, Lancaster, PA; :
and PATIENT FIRST URGENT CARE,        :

Butler, Avenue, Lancaster, PA,          :
                                        :
                    Respondents.        :

## **MEMORANDUM OPINION**

Smith, J.                                               October 4, 2017

The instant case is a purported petition for a writ of habeas corpus under 28 U.S.C. § 2241, filed by a *pro se* petitioner who does not appear to have been convicted of a crime for which he is serving any aspect of a sentence.  It also does not appear that his liberty is restrained in any way which would be a proper ground to seek habeas relief.  Instead, the petitioner appears to allege that he is entitled to habeas relief because, in retaliation for him acting as a whistleblower in 1987, various entities – private and public – are constantly harassing him.  He further alleges that he has "been a victim of organized stalking since 1987 and a victim of electronic and direct energy weapons since 2005."  While the court recognizes that the Supreme Court has broadly defined what it means to be "in custody" under the habeas statutes, the Court has not defined it so broadly as this court would have to define it to find that the petitioner is "in custody."  Accordingly, the court will dismiss the petition without a hearing for lack of subject-matter jurisdiction.

## I.     PROCEDURAL HISTORY

The *pro se* petitioner, Stanley J. Caterbone ("Caterbone"), commenced this action by filing an application to proceed *in forma pauperis* (the "IFP Application") and a purported petition for a writ of habeas corpus under "28 § 2242" on August 28, 2017.[1]  Doc. No. 1. Caterbone summarizes his claim of an entitlement to habeas relief as follows:

> The Plaintiff alleges that he has been a prisoner of the "state" since 1987, and that
> the activities surrounding the PETITIONER'S life has escalated into a daily

---
[1] Caterbone also references Advanced Media Group in the caption as a petitioner.

2

occurrence of assaults. Unfortunately while the PETITIONER has made many in person complaints to just about every law enforcement agency, the most recent to the Manheim Township Substation in Lancaster Township regarding an assault at the Manor Shopping Center minutes previously (December 9, 2015 9:00 pm), the pleas for help and assistance have yielded nothing but more attacks to the PETITIONER'S person, property, electronics, home, auto, reputation, intellectual property, and lastly his mental state-of-mind – A BRUTAL ARRAY OF PSYCHOLOGICAL TORTURE. The PETITIONER has already made claims of COINTELPRO-like tactics in his filings in the U.S.C.A. Case No. 15-3400 against these same actors and perpetrators. The PETITIONER will provide evidence to support this writ and offer a final remedy and redress in accordance with federal law.

Due to the actions and criminal activity of the above named DEFENDANTS, it is reasonable to prove that every aspect of the Complainant's life, Stan J. Caterbone, is subject to undue influence; harassment; torture; obstruction; etc. thus resulting in irreparable harm and injury. This situation and set of circumstances as outlined here, and in Part II, Finding of Facts, and all previous filings; reports; and statements, is a prescription for only one endgame – death or suicide. There is no life action or activity that is immune from this horrendous HATE CRIME. The precedent and landmark elements that make this so appalling is that the Complainant has never done anything to set these circumstances in motion but to be right regarding International Signal & Control back in 1987; as well as many other proclamations and forecasts. That being said, it is also widely reported that many Targeted Individuals and Victims of U.S. Sponsored Mind Control are lead to death and/or suicide. The Lancaster Community-At-Large is guilty of creating; abetting; fostering; and executing this tragedy. The fact that local; state; and federal law enforcement induce and encourage this environment of hate is landmark.

Doc. No. 1 at ECF p. 2-3.

While very much unclear due to the verbose and repetitive nature of Caterbone's filing, it appears that he relates back all of his allegations to retaliation that occurred after he acted as a whistleblower in 1987 with respect to a "local company" that was "indicted for selling arms and weapons to Iraq via South Africa with the aid and support of the CIA and NSA." Doc. No. 1 at ECF p. 9. The retaliation occurred in the form of a "widespread wholesale cover-up through an elaborate slander campaign that included 29 false arrests, multiple false imprisonments, and a fabricated mental illness record that to this day is still resonating." *Id.* (internal quotation marks

omitted). He references being illegally detained while in the barracks of Fort Meade in Maryland in March 2016; an illegal detention that occurred in July 2005 while he was at a military museum; and a January 2006 illegal detention by Homeland Security in the Houston airport after he returned from Mexico. *Id.* at ECF p. 11. Despite these references to false arrests, false imprisonments, and illegal detentions, it does not appear from the petition that Caterbone is raising claims regarding a conviction or sentence that he is currently serving or an arrest for which he is awaiting the completion of his prosecution.

As indicated above, Caterbone asserts that he is a "targeted individual," which appears to essentially be someone "declared an 'enemy of the State'" by various law enforcement and government entities. *Id.* at ECF p. 13. He provides some information describing "targeted individuals," and he also provides information on "COINTELPRO," which stands for "**CO**unter INTELligence **PRO**gram." *Id.* at ECF pp. 13-29 (emphasis in original). Then he goes on to provide information about CIA mind control experiments. *Id.* at ECF pp. 30-43. Finally, he provides a resume and biography, which covers events that have occurred in Caterbone's life since his graduation from Millersville University in 1976 through his proposal of an "ORGANIZED STALKING AND DIRECTED ENERGY WEAPONS HARASSMENT BILL" to a member of the Pennsylvania House of Representatives and City of Lancaster Mayor Richard Gray (a respondent in this case) in 2009. *Id.* at 44-48.

In addition to the aforementioned information included in the habeas petition, Caterbone has attached various documents to the petition, which appear to include, *inter alia*: (1) a September 19, 2016 order entered by the undersigned in another of Caterbone's cases, *Caterbone v. United States President Barack Obama, et al.*, No. 16-cv-4641; (2) a September 1, 2017 letter to the clerk of this court; (3) a "press release" from Caterbone in which he describes what

purportedly occurred before the undersigned in another of Caterbone's cases, *In re Stanley Caterbone*, No. 17-cv-1233 (a bankruptcy appeal); (4) another copy of Caterbone's resume and biography; (5) Caterbone's "*pro se* billings" notice (in the amount of $1,217,382.00) for *In re Stanley Caterbone*, No. 17-cv-1233, which appears to cover events that occurred since May 2005 until March 2007; (6) a copy of Lyn Batzar Boland's 2012 article for the St. John's Law Review titled: "Pro Se Litigant's Eligibility for Attorney Fees Under FOIA: *Crooker v. United States Department of Justice*;" (7) a copy of a 2012 article for the William Mitchell Law Review by Dan Gustafson, Karla Glueck, and Joe Bourne, titled: "Pro Se Litigation and the Costs of Access to Justice;" and (8) a list of active court cases that Caterbone has in various jurisdictions.[2]

In addition to the petition and exhibits, which total almost 130 pages, Caterbone has submitted additional documentation in support of his purported habeas petition. Caterbone filed the first exhibit on September 13, 2017, and it is titled: "OPENING STATEMENT re OBSTRUCTION OF JUSTICE IMPEDIMENTS," which is 48 pages in length, but it also contains two DVDs containing numerous documents. Doc. No. 2. Without referencing the documents contained on the DVDs (which pertain to Caterbone's claims here), the Exhibit that is docketed on ECF is almost a word-for-word copy of a large portion of Caterbone's habeas petition.[3] *Compare* Doc. No. 1 at ECF pp. 8-48, *with* Doc. No. 2 at ECF pp. 2-41. The only new

---

[2] With regard to Caterbone's civil action docketed at No. 16-cv-4641, he filed a very similar action that he also characterized as a habeas petition. In the September 19, 2016 order, the court addressed Caterbone's application to proceed *in forma pauperis* and, as part of that analysis, had to determine whether he was actually seeking habeas relief or if he was instead attempting to bring a civil action under 42 U.S.C. § 1983 for purposes of determining the relevant filing fee. The court determined that it appeared that the court would lack subject-matter jurisdiction over any habeas claim (because Caterbone was not "in custody"), but nonetheless gave him the opportunity to (1) identify the type of action he was bringing, and (2) insofar as the court was denying the application to proceed *in forma pauperis* in that case, to pay the filing fee (since there is a significant difference between the filing fees for habeas cases and regular civil actions). *See* Order, *Caterbone v. United States President Barack Obama, et al.*, No. 16-cv-4641, Doc. No. 3. Caterbone never timely paid the filing fee (or identified the type of action he was seeking to prosecute) and the court dismissed the action without prejudice. *See* Order, *Caterbone v. United States President Barack Obama, et al.*, No. 16-cv-4641, Doc. No. 4.

[3] It may very well be an identical copy but the court did not review every word to confirm.

document is a "**REQUEST FOR HEARING OBSTRUCTION OF JUSTICE IMPEDIMENTS**" that appear to relate to Caterbone's bankruptcy appeal that was docketed at No. 17-cv-1233. *See* Doc. No. 2 at ECF pp. 43-46 (emphasis in original). In this document, Caterbone describes that although he had a net worth of over $1 million dollars in 1987, his activities as a whistleblower that year caused the "Lancaster Community-at-large" to "thwart[]" him from obtaining income through his business or other employment opportunities. *Id.* at ECF p. 43 (alteration to original). He also describes being forced to remain inside of his home due to the presence of a black pit bull, which had previously bitten him in June 2016 and appears to be owned by his next door neighbors. *Id.* at ECF p. 44. In addition, he claims that his neighbors subject his home to vandalism, steal items from inside of his home, and infest his home with cockroaches. *Id.*

Caterbone also filed another exhibit in support of the habeas petition on September 20, 2017, which is a 40-page document he apparently drafted and is titled "Terrorism Used as a Political Tactic to Justify Warrantless Surveillance and the Erosion of our Civil Liberties." Doc. No. 3. While the document covers numerous topics, Caterbone appears to be concerned with the potential reauthorization of Title VII of the Foreign Intelligence Surveillance Act. *Id.* at ECF p. 1. He also appears to be concerned with the current presidential administration "**using the old J. Edgar Hoover COINTELPRO Program while at the same time expanding the powers of local law enforcement through 3 Executive Orders in order to Militarize Local Police Departments**." *Id.* at ECF p. 4 (emphasis in original). He claims that he is being targeted in numerous forms such as, *inter alia*, (1) computer hacking of all of his electronic equipment, (2) stalking and harassment by residents, neighbors, law enforcement, and others, (3) a plan designed to drain him of all of his cash resources, (4) falsified complaints by his neighbors which

resulted in summary offenses; (5) threats of physical harm in public spaces, (6) instances of breaking and entering into his home to vandalize, steal, poison his food, and strategically place cockroaches in various locations in his home, and (7) steal and manipulate his court filings and evidence. *Id.* at ECF pp. 4-5. He further asserts that "**U.S. Sponsored Mind Control Systems**" in the nature of "**Synthetic Telepathy Coupled with Electromagnetic Weapons used for pain**" have been used against him since 2005. *Id.* at ECF p. 5 (emphasis in original).

Caterbone filed yet another document on September 25, 2017, which is 260 pages in length and titled: "Statement re Torture Case Law Evidence-Case Law-Compensatory Damages for Remedy September 25, 2017." Doc. No. 4. In this voluminous submission, Caterbone includes, *inter alia*, (1) purported case law relating to the right to sue for torture and the potentially recoverable damages, (2) purported news articles about torture victims receiving damages, (3) House Report 110-844 dealing with the Justice for Victims of Torture and Terrorism Act, (4) yet another copy of his background profile, which he had included in his prior submission, (5) other documents and purported articles relating to mind control, (6) documents related to another of his civil matters, which is before the Third Circuit Court of Appeals, (7) a purported copy of a motion for a preliminary injunction (seeking in home spa and pain medications) with attached exhibits filed in the Court of Common Pleas of Lancaster County, (8) some of his medical documentation including, *inter alia*, clinical summary reports, medical reports, prescription information, and receipts, (9) a copy of a criminal complaint he seemingly filed against Southeast Medical Clinic at Brightside Church on January 27, 2016, and (10) a

completed Pennsylvania Department of Transportation application to obtain a disability parking placard.[4]  *See* Doc. No. 4 at ECF pp. 3-50, Doc. Nos. 4-1, 4-2, 4-3, 4-4.

The final submission by Caterbone thus far in support of his habeas petition is a 100-page document titled: "**REQUEST FOR HEARING OBSTRUCTION OF JUSTICE IMPEDIMENTS**."  Doc. No. 5 (emphasis in original).  The main portion of this document is almost an identical copy of a document Caterbone previously filed with the only apparent changes being the numbering used and the reference to the date.  *Compare* Doc. No. 5 at ECF pp. 3-6, *with* Doc. No. 2 at ECF pp. 43-46.  Caterbone attaches various documents to this request, including, *inter alia*: (1) an article in "truthdig" titled: "Trump's Making Good on One of His Many Campaign Promises: Promoting Unfettered Police Power'" (2) an August 6, 2016 document he seemingly drafted and titled: "**STATEMENT OF FACT re Lancaster City Police Department v. Caterbone Family**," which appears to refer to, *inter alia*, (a) incidents where Lancaster City Police Detective Clark Bearinger had Caterbone involuntarily committed to a mental health institution on three occasions: in 2010, 2015, and 2016, (b) his arrest in 1987 for 4 felonies and 3 misdemeanors, with the charges eventually being dismissed in March 1988, and (c) a 2006 incident where he was sent to Lancaster County Prison for a period of 60 days; (3) copies of documents related to another of his prior civil actions in this court: *Caterbone v. Lancaster City Police Bureau, et al.*, No. 08-cv-2982; (4) a June 22, 2016 document titled, "THEY WANT TO KILL ME **DECLARATION BY STAN J. CATERBONE re LANCASTER CITY POLICE ACTIONS AND ACTIVITIES OF LATE**;" (5) more of his medical documentation; and (6) another biography.  Doc. No. 5 (emphasis in original).

---

[4] The court identifies the case law and news articles as "purported," because they are not copied in a traditional format and appear to have, at best, been either copied by retyping or cut-and-pasted.

## II.    DISCUSSION

### A.    The IFP Application

Regarding applications to proceed *in forma pauperis*, the court notes that

any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a).  This statute

"is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x. 130, 131-32 (3d Cir. 2008) (per curiam) (footnote omitted).

Concerning the litigant's financial status, the litigant must establish that he or she is unable to pay the costs of suit. *Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. We review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

The Third Circuit does not define what it means to be indigent.  Nonetheless, "[a] plaintiff need not 'be absolutely destitute to enjoy the benefit of the statute.'" *Mauro v. New*

*Jersey Supreme Ct., Case No. 56, 900*, 238 F. App'x 791, 793 (3d Cir. 2007) (per curiam) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)); *see also Potnick v. Eastern State Hosp.*, 701 F.2d 243 (2d Cir. 1983); *Zaun v. Dobbin*, 628 F.2d 990 (7th Cir. 1980). Some courts have explained that all a plaintiff needs to show is that because of his or her poverty, he or she cannot afford to pay for the costs of the litigation and provide himself or herself (or his or her family) with the necessities of life. *See, e.g.*, *Rewolinski v. Morgan*, 896 F. Supp. 879, 880 (E.D. Wis. 1995) ("An affidavit demonstrating that the petitioner cannot, because of his poverty, provide himself and any dependents with the necessities of life is sufficient."); *Jones v. State*, 893 F. Supp. 643, 646 (E.D. Tex. 1995) ("An affidavit to proceed *in forma pauperis* is sufficient if it states that one cannot, because of poverty, afford to pay for the costs of litigation and still provide for him- or herself and any dependents.").

Here, after reviewing the application to proceed *in forma pauperis*, it appears that Caterbone is unable to pay the costs of suit. Therefore, the court grants him leave to proceed *in forma pauperis*.

## B.    <u>Analysis</u>

Preliminarily, the court notes that Caterbone purports to bring this habeas petition under 28 U.S.C. § 2242. *See* Petition for Writ of Habeas Corpus at 2. Section 2242 addresses only the requirements for an application seeking habeas relief, and does not provide a substantive basis for seeking relief. *See* 28 U.S.C. § 2242 (pertaining to "[a]pplication[s] for a writ of habeas corpus" (alteration to original)). The court will presume that Caterbone is seeking to pursue relief under 28 U.S.C. § 2241 because he does not allege that he is "in custody pursuant to the judgment of a State court" or "[a] prisoner in custody under sentence of a court established by Act of Congress," such that he could seek habeas relief under 28 U.S.C. § 2254 or § 2255. *See*

28 U.S.C. § 2254 (providing that, *inter alia*, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody ***pursuant to the judgment of a State court***" (emphasis added)); 28 U.S.C. § 2255 (providing that it applies to "[a] prisoner in custody under sentence of a court established by Act of Congress").

Section 2241 limits available habeas relief to individuals "in custody," *Jones v. Cunningham*, 371 U.S. 374-75 (1963), and this "custody requirement is jurisdictional," *see Gutierrez v. Gonzales*, 125 F. App'x 406, 412 (3d Cir. 2005) (per curiam) (citing *Maleng v. Cook*, 490 U.S. 488, 490 (1989); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)); *see also United States ex rel. Dessus v. Pennsylvania*, 452 F.2d 557, 560 (3d Cir. 1971) ("[C]ustody is the passport to federal habeas corpus jurisdiction."). Despite section 2241's "in custody" limitation, "the statute does not attempt to mark the boundaries of 'custody' nor in any way other than by use of that word attempt to limit the situations in which the writ can be used." *Jones*, 371 U.S. at 375. Thus, "in the United States the use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody." *Id.* Further, "[h]istory, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus." *Id.* at 376.

However broadly the Supreme Court has construed the "in custody" requirement for individuals seeking habeas relief, this court has located no decision (in any jurisdiction) that would extend it to claims that Caterbone raises here. Although Caterbone references having prior interaction with law enforcement in the nature of being involuntarily committed to a mental health institution on three occasions, spending 60 days in prison in 2006, some purported false arrests, and issues with summary offenses, he does not claim to be serving any aspect of a

sentence – incarceration, probation, or parole – after being convicted. He does not claim to have been charged with a crime and is still awaiting its ultimate disposition. Instead, he appears to claim that his neighbors and other individuals in Lancaster, Pennsylvania are restricting his movement through their constant harassment and are doing so in conjunction with mind control sponsored by various agencies of the United States government. He alleges that individuals are prohibiting him from earning money by constantly trying to drain his available cash reserves; that individuals are hacking all of his electronic devices; and that people are breaking into his home to do nefarious things such as poison his food. Despite all of these claims, it does not appear that Caterbone's liberty is actually being restrained in any manner and, more importantly, the purported restraints are not the types of restraints that have "been thought sufficient in the English-speaking world to support the issuance of habeas corpus."[5] *Id.* Accordingly, the court lacks subject-matter jurisdiction to consider the instant petition and will dismiss the petition without prejudice.[6]

### C.     Certificate of Appealability

To be entitled to a certificate of appealability, Caterbone would have to show that, *inter alia*, reasonable jurists would debate whether this court was correct in its ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("To obtain a COA under § 2253, a habeas petitioner must

---

[5] The cases Caterbone cites in his petition (at least those that pertain specifically to habeas corpus) all involve individuals seeking habeas relief after conviction. *See* Doc. No. 1 at ECF pp. 6-10.

[6] If the court had subject-matter jurisdiction over this petition, the court would nonetheless dismiss the petition for the failure to state a claim under which habeas relief could be granted under 28 U.S.C. § 1915(e)(2). In this regard, although Caterbone's inability to show that his is "in custody" would be sufficient in itself to warrant dismissal, the court notes that Caterbone seeks numerous forms of relief that are inconsistent with habeas relief, such as damages (for such things as reimbursement for all of his *pro se* billing invoices) and injunctive relief (in the nature of awarding him summary judgment on all of his claims filed in the Lancaster County Court of Common Pleas and in this court). *See* Doc. No. 1 at ECF p. 12. The court further notes that it does not appear that any of the respondents would be proper respondents in a habeas petition in any event because "[i]n federal habeas proceedings, the proper party-respondent is "'the person who has custody over [the petitioner].'" *Saunders v. United States Parole Comm'n*, 665 F. App'x 133, 135 (3d Cir. 2016) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004)).

make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes a showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement further." (internal citations and question marks omitted)).  The court does not find that a reasonable jurist would disagree with the court's assessment of Caterbone's claims; accordingly, the court will not issue a certificate of appealability.

## III.    CONCLUSION

In this purported section 2241 habeas petition, Caterbone has not set forth allegations that would allow this court to find that he is "in custody" to be potentially eligible for habeas relief. Accordingly, this court lacks subject-matter jurisdiction over this purported petition and will dismiss the petition without prejudice.

A separate order follows.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.